UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-CR-0142-CVE |
| ) | |
| KYLE EDWIN FREEMAN, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is plaintiff's motion to disqualify counsel for Kyle Edwin Freeman (hereinafter "defendant") due to conflict of interest (Dkt. # 51). In its motion, plaintiff argues that defense counsel, Assistant Federal Public Defender William Widell, cannot entertain offers of cooperation for defendant or advise him should he be called as a witness in the murder trial of Widell's former client in another case, Arnold Dean Howell, Jr. Plaintiff states that these limitations–caused by Widell's former representation of Howell–create non-waiveable conflicts and require Widell's disqualification.

In his response (Dkt. # 52), defendant maintains there is no conflict that prevents Widell's representation of defendant. Defendant argues that plaintiff's representation, that it cannot offer defendant any plea agreement in this case because of Widell's presence, is incorrect as the mere statement that an offer could be made does not create an actual conflict. Dkt. # 52, at 2. Defendant further argues that he does not believe any information he has will materially assist plaintiff in its prosecution of Howell. Id. Finally, defendant states that a waiver of such a conflict is possible. Id. at 3.

I.

On August 7, 2020, a grand jury returned an indictment charging defendant with murder in the first degree in Indian country, in violation of 18 U.S.C. §§ 1151, 1153, and 1111. Dkt. # 12. On February 10, 2021, Widell filed an entry of appearance on behalf of defendant. (Dkt. # 23). The Court appointed Widell on February 17, 2021. (Dkt. # 24).

On March 17, 2021, plaintiff charged Howell with first degree murder in Indian country (Indictment, United States v. Howell, Case No. 21-CR-121-JFH, Dkt. # 1) ("Howell case"). On March 23, 2021, Widell was appointed to represent Howell. Order Appointing Counsel, United States v. Howell, Case No. 21-CR-121- JFH, Dkt. # 10.  At that time, it was not evident that defendant was a potential witness in the Howell case.  However, during the course of its investigation, plaintiff states that it came to learn defendant was either with, or in communication with, Howell on the day of the murder charged in the Howell case.

Plaintiff alleges that, prior to the April 13, 2015 murder charged in the Howell case, Howell "called his brother, [defendant], to tell him about [a] plan to rob" another person. Dkt. # 45, at 2. Plaintiff alleges that Monica Howell, defendant's and Howell's mother, allegedly drove Howell to the robbery, that she later learned the robbery had become a murder from Howell, and that she then called defendant and told him about the murder. Id. Plaintiff alleges defendant was with the victim's son and told him what his mother had said on the phone. The victim's son then called the police. Id.

However, in a subsequent interview with the co-defendant in the Howell case, Katherine Freeman (who is Howell's and defendant's sister) stated it was defendant, and not their mother, who drove Howell to the robbery-turned-murder. Id. Plaintiff represents that, after it became apparent

that defendant might have information regarding the case, "[t]here were discussions on whether the Howell government trial team would seek an interview with [defendant], which [plaintiff] was unable to confirm." Id. Plaintiff also represents that "Widell inquired whether [defendant] would receive consideration in exchange for [said] interview, at which point the government understood Widell would concede that then there would be a conflict." Id. Widell has since moved to withdraw in the Howell case (Motion to Withdraw as Attorney of Record, United States v. Howell, Case No. 21-CR-121-JFH, Dkt. # 48), citing a conflict, and the motion was granted on June 14, 2021 (Order Allowing Withdrawal of Counsel, United States v. Howell, Case No. 21-CR-121-JFH, Dkt. # 53).

## II.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense." United States v. Collins, 920 F.2d 619, 624 (10th Cir. 1990) (quoting U.S. Const. am. VI.). While "a defendant is afforded an opportunity to select an attorney," "the right to choice of counsel is not absolute." United States v. Nichols, 841 F.2d 1485, 1502 (10th Cir. 1988) (citing United States v. Padilla, 819 F.2d 952, 956 (10th Cir. 1987). Further, "[t]he right to counsel of choice concerns the ability to select a particular lawyer and 'does not extend to defendants who require counsel to be appointed for them.'" United States v. Hopkins, 920 F.3d 690, 703 (10th Cir. 2019) (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006)).

"The general principles to be applied in reviewing a district court's disqualification of counsel are laid out in Wheat v. United States, 486 U.S. 153 (1988)." United States v. Williams, 81 F.3d 1321, 1324 (4th Cir. 1996). Courts have the duty to "balance a defendant's constitutional right to retain counsel of his choice against the need to maintain the highest standards of professional

responsibility, the public's confidence in the integrity of the judicial process and the orderly administration of justice." Collins, 920 F.2d at 626 (citations omitted). "Courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. District courts are granted broad latitude in making the evaluation, and their determinations are reviewed for abuse of discretion. Id.

In making the determination of whether to disqualify an attorney, courts often also assess whether the attorney could use information of one party to create an unfair advantage to another party. United States v. James, 708 F.2d 40, 45 (2d Cir. 1983). In that inquiry, courts consider whether "the attorney in question is potentially in a position to use privileged information obtained during prior representation of the movant...." Id. "Disqualification of counsel in such cases is rooted in notions of fundamental fairness; allowing an attorney to represent a client in a situation where he may use information obtained in the course of former representation of the client's adversary gives the client an 'unfair advantage.'" Id. (citing United States v. Cunningham, 672 F.2d 1064, 1072 (2d Cir. 1982)). Where an attorney is "likely to have had access to privileged information potentially relevant to the present case," in order "to avoid the prospect of a conflict of interest which potentially could confer an unfair advantage" to one client, disqualification is appropriate. United States v. DiTommaso, 817 F.2d 201, 219–20 (2d Cir. 1987).

### III.

As noted above, potential violations of ethical standards inform whether disqualification is appropriate. Relevant here, Model Rule of Professional Conduct 1.9(a), provides that:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Widell represented Howell in the Howell case. If defendant is called as a witness for either Howell or plaintiff in the Howell case, Widell will also be representing defendant as a witness in the Howell case. Therefore, Widell would be potentially representing defendant in the same matter in which he formerly represented Howell.

Next, the Court examines whether defendant's interests are, or could potentially be, materially adverse to those of Widell's former client, Howell. As indicated by discussions between plaintiff and Widell, plaintiff might offer defendant a plea agreement in this matter, in exchange for cooperation in the Howell case. Were Widell vigorously advocating for defendant, he would consider the offer and may advise defendant to testify in the Howell case. Were defendant's testimony inculpatory as to Howell, Widell's advice to testify, while appropriate to give defendant, would be contrary to the interests of his former client, Howell, as it would result in additional evidence being offered against him. However, should Widell advise defendant against offering such testimony, Widell could be interpreted as protecting Howell at the expense of advising defendant to take a potentially advantageous agreement with plaintiff in his own case.

Further, defendant could also be called to testify as a witness for the defense in Howell's case. This would again require Widell to advise defendant one way or the other as to whether to testify to the events in Howell's case, or whether to exercise his Fifth Amendment right against self-incrimination. Either advice has potential adverse or helpful implications for Widell's former client, Howell. As demonstrated by the above scenarios, while the risk is dependent on whether plaintiff

(or Howell) intends to call defendant as a witness in the Howell case, any advice rendered would be tainted by the potential that it could be materially adverse to either Widell's current or former client, and thus in violation of ethical standards as outlined in Model Rule of Professional Conduct 1.9(a).

The potential for ethical conflicts here is high and weighs in favor of disqualification. While courts must "balance a defendant's constitutional right to retain counsel of his choice against the need to maintain the highest standards of professional responsibility . . .", here, there is no infringement on defendant's "right to retain counsel of his choice." Collins, 920 F.2d at 626. Defendant does not have the right to counsel of his choosing where, as here, counsel is court-appointed. Hopkins, 920 F.3d at 703. As a result, the substantial risk of ethical conflicts, outlined above, clearly outweighs whatever interest defendant has in having Widell continue to represent him.

Additionally, disqualification of Widell (and appointment of new counsel) protects, rather than infringes on, a constitutional right defendant does have: his right to counsel. Defendant's constitutional interest in effective representation is best served by the appointment of conflict-free counsel. Finally, the Court must also consider the public interest. In this case, the public's interest in providing defendants with conflict-free representation, in order to maintain the appearance of a fair and untainted judicial process, is also served by disqualifying Widell from this matter.

As a secondary matter, the conflict scenarios above also illustrate that Widell could be in the position "to use privileged information obtained during prior representation . . ." James, 708 F.2d at 45. Regardless of whether Widell actually has such information, or whether he would use it, where an attorney is "likely to have had access to privileged information potentially relevant to the present case," in order "to avoid the prospect of a conflict of interest which potentially could confer an unfair advantage" to one client, disqualification is appropriate. DiTommaso, 817 F.2d at 219–20.

As a result, because Widell was in a position to have access to privileged information that could confer an unfair advantage on one of his clients, he should be disqualified.

IV.

As outlined above, there is a serious risk of potential conflict arising if Widell were allowed to continue to represent defendant. Further, Widell's position as counsel to both Howell and defendant, a potential witness in Howell's case, means that he potentially learned privileged information that could create an unfair advantage for one of his clients. That position alone implicates fundamental notions of fairness in a way that militates in favor of disqualification.

While Widell believes that such a conflict could be waived by the consent of both Howell and defendant, the Court does not agree. The Court has "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 163. The Court exercises that latitude here, and will not entertain a waiver.

**IT IS THEREFORE ORDERED** that plaintiff's motion to disqualify opposing counsel due to conflict of interest (Dkt. # 51) is **granted**. The Office of the Federal Public Defender and its attorneys, Assistant Federal Public Defenders William Widell and Angela M. Bonilla, are hereby **disqualified** as counsel, and new counsel will be appointed.

**DATED** this 15th day of June, 2021.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE